

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

October 13, 2022

**BY HAND & ECF**
The Honorable Cathy Seibel
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, NY 10601-4150

Re: *United States v. Adrian McKenzie*, 22 Cr. 314 (CS)

Dear Judge Seibel:

The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for October 19, 2022.  For the reasons that follow, the Government respectfully requests that the Court impose a sentence within the 30-to-37-month Guidelines range. Such a sentence would not be greater than necessary to serve the legitimate purposes of sentencing.

**A.  Offense Conduct**

At approximately 9:15 on the evening of March 24, 2022, McKenzie was walking on the sidewalk in Mount Vernon, New York, when officers with the Westchester County Police Department who were responding to the sound of gunshots in the area shined a flashlight on him. (PSR ¶¶ 8-9).  McKenzie attempted to evade the officers, who lost sight of him briefly.  (PSR ¶ 9).  When the officers spotted McKenzie again a short time later and shouted "police department" from their car, McKenzie attempted to run, but fell down in the middle of the street.  (PSR ¶ 10). As he was getting back to his feet, he threw under a nearby parked car his .380 caliber semi-automatic pistol, which was loaded with five rounds in its magazine and one round in its chamber. (PSR ¶ 10).

McKenzie's possession of the firearm followed his prior convictions for multiple felony offenses, including attempted robbery in the second degree, aggravated assault, and attempted criminal homicide.  (PSR ¶¶ 13, 32, 34).  McKenzie told officers that he had been carrying the firearm out of fear for his safety, because he was not from the area.  (PSR ¶ 12)

**B.  Procedural History**

On March 25, 2022, McKenzie made his initial appearance on a criminal complaint before the Honorable Andrew E. Krause.  On June 6, 2022, McKenzie waived indictment and pleaded guilty, without a plea agreement, to an information that charged him with possession of a firearm following a felony conviction, in violation of Title 18, United States Code, Section 922(g)(1).

## C.  The Guidelines Calculation

### 1.  Total Offense Level

The Government agrees with the Probation Office's offense level computation set forth in the PSR.  The base offense level is 20, pursuant to U.S.S.G. §2K2.1(a)(4)(A).  (PSR ¶ 20). Assuming McKenzie continues to demonstrate acceptance of responsibility for the offense, the Government agrees that the total offense level is 17.  (PSR ¶ 29).

### 2.  Criminal History Category

The Government agrees with the Probation Office's calculation that McKenzie has four criminal history points and a criminal history category of III.  (PSR ¶¶ 31-37).

It appears that the Government, McKenzie, and the Probation Office agree that: (1) McKenzie's only sentences within the Guidelines' time limitation periods are his June 10, 2004 concurrent sentences of 7.5 to 15 years' imprisonment for aggravated assault and attempted criminal homicide in a single case, relating to his shooting of man five times; (2) these sentences were imposed on the same day and were not separated by an intervening arrest, and are therefore scored as a single conviction pursuant to U.S.S.G. §4A1.2(a)(2); and (3) one of these sentences receives three criminal history points. (PSR ¶ 34).

It is the Government's position that, as set forth in the PSR, an additional point is assessed, pursuant to U.S.S.G. §4A1.1(e), because both of the foregoing June 10, 2004 sentences were for crimes of violence, one of which did not receive criminal history points because the two sentences were treated as a single sentence.  (PSR ¶ 34).

McKenzie objects to the assessment of this additional point.  He argues, first, that §4A1.1(e) applies only to convictions that are treated as a single sentence, but which relate to offenses committed on separate occasions.  This argument may have had merit before 2007, when the Guideline specified that its extra-point provision "d[id] not apply where the sentences are considered related because the offenses occurred on the same occasion."  U.S.S.G. §4A1.1(f) (2006).  But in 2007, Amendment 709 removed this language.

McKenzie argues, in essence, that this deleted language still applies.  He points to the commentary's example, in which "a defendant's criminal history includes two robbery convictions for offenses committed on different occasions," but "the sentences for these offenses were imposed on the same day and are treated as a single prior sentence."  U.S.S.G. § 4A1.1 cmt. n.5.  The Guidelines then explain that "[i]f the defendant received a five-year sentence of imprisonment for one robbery and a four-year sentence of imprisonment for the other robbery (consecutively or concurrently), a total of 3 points is added under § 4A1.1(a)" and "[a]n additional point is is added under § 4A1.1(e) because the second sentence did not result in any additional point(s) (under § 4A1.1(a), (b), or (c))."  *Id.*  McKenzie argues that the Guideline does not apply in his case, because "the two offenses arise out of a single act which occurred within a single incident."  (Def.'s Sent. Mem. at 2).  But it appears that every federal court of appeals that has addressed the issue has

concluded that §4A1.1(e) applies to multiple convictions for crimes of violence stemming from a single criminal transaction.

The Fifth Circuit's opinion on this issue, *United States v. Scott*, 654 F.3d 552 (5th Cir. 2011), is instructive. The Fifth Circuit there considered whether § 4A1.1(e)—then § 4A1.1(f)—applied to "otherwise-uncounted prior offenses committed on the same occasion" and ruled that it did. *Id.* at 556. Scott previously had been convicted and sentenced for four counts of deadly conduct resulting from "a 1996 shooting spree in which [he] shot in the direction of four people." *Id.* at 554. In calculating the Guideline range, three additional points were added under § 4A1.1(f) for the three deadly-conduct sentences that did not receive their own criminal-history points because all four were treated as one sentence under § 4A1.2(a)(2). *Id.* at 555–56. "Scott argue[d] that his 'crime of violence'—in his eyes, the entire shooting spree—was already counted in his criminal-history points and that he should not have been assessed three additional points for the three grouped and otherwise-uncounted deadly-conduct sentences." *Id.* at 556. The Fifth Circuit rejected that argument, concluding that it was inconsistent with the Guidelines' text: "Common sense dictates that th[e] portion of the sentence," "because such sentence was counted as a single sentence," "refers back to uncounted sentences for crimes of violence rather than uncounted 'crimes of violence' themselves." *Id.* (emphasis in original).

Also like the defendant here, Scott relied on the example in Application Note 5—then Note 6—to support his argument. The Fifth Circuit responded by explaining that Scott "misses the point as to why the sentences receive a point under section [(e)]. This example illustrates how to apply the enhancement to sentences considered a single sentence under § 4A1.2(a)(2)(B) because they were imposed on the same day" and "does not speak to sentences considered a single sentence under § 4A1.2(a)(2)(A) because they were contained in the same charging instrument, nor does it state that section [(e)] points can only be assessed to sentences for conduct that occurred on different days." *Id.* at 557. That court further pointed to "the Supplement to Appendix C [now Appendix C, Volume III] explaining the Guidelines' amendments," which "provides its own, more general example of how to apply § 4A1.1 [(e)]." *Id.* In that example, "it simply states that the prior sentences were considered a single sentence and therefore the second sentence deserved a point under section [(e)], and does not state whether the prior crimes occurred on the same or different days." *Id.*

The Seventh, Eighth, and Ninth Circuits have reached the same conclusion: "Prior sentences for crimes of violence that are counted as a single sentence and not assessed points under subsections (a) through (c) will receive an additional point under subsection (e) whether or not the crimes occurred on the same occasion." *United States v. Tolbert*, 558 F. App'x 701, 704 (7th Cir. 2014) (per curiam); *see also United States v. Fox*, 627 F. App'x 608, 610 (9th Cir. 2015) ("Section 4A1.1(e) no longer distinguishes prior offenses that occurred on the same occasion from prior offenses that occurred on different occasions."); *King v. United States*, 595 F.3d 844, 850 n.3 (8th Cir. 2010) (noting the same).

McKenzie also objects to the assessment of the additional point because, he argues, criminal attempt to commit criminal homicide is not a "crime of violence." (Def.'s Sent. Mem. at 2-3).

As McKenzie notes, "for purposes of §4A1.1(e), 'crime of violence' has the meaning given that term in §4B1.2(a)." U.S.S.G. §4A1.1, cmt. n.5. Section 4B1.2(a)'s force clause defines a "crime of violence" by asking whether it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. §4B1.2(a)(1). McKenzie argues that although the Pennsylvania criminal homicide statute under which McKenzie was convicted provides that "a person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being," Pa.C.S. § 2501(a), it does not meet this test set forth in the force clause, because "included in the definition of 'criminal homicide' is 'causing suicide as criminal homicide.'" (Def.'s Sent. Mem. at 2) (citing 18 Pa.C.S. § 2505). And, "[u]nder Pennsylvania law, "[a] person may be convicted of criminal homicide for causing another to commit suicide only if he intentionally causes such suicide by force, duress, or deception." (Def.'s Sent. Mem. at 2) (citing 18 Pa.C.S. § 2505(a)). McKenzie contends that, because "the minimum conduct for attempted criminal homicide is attempting to deceive someone into committing suicide[, and] deception does not require the 'use, attempted use or threatened use of physical force' this offense cannot be considered a 'crime of violence' under the force clause." (Def.'s Sent. Mem. at 2).

McKenzie's argument is foreclosed by *United States v. Castleman*, 572 U.S. 157 (2014) and *United States v. Scott*, 990 F.3d 94 (2d Cir. 2021). In that 18 Pa.C.S. § 2505 requires that a defendant "intentionally cause[d]" a suicide (*i.e.*, a death), it necessarily also requires that the defendant intentionally caused bodily injury. *See Scott*, 990 F.3d at 100 (pointing out that death is "the ultimate bodily injury."). As the Supreme Court has made clear, "knowing or intentional causation of bodily injury *necessarily* involves the use of physical force." *Castleman*, 572 U.S. at 169 (emphasis added). In addition, "in *Castleman*, the Supreme Court explained that a defendant's use of force does not depend on his own actions in initiating or applying injurious force. What matters is that he knowingly employed or availed himself of physical force as a device to cause intended harm." *Scott*, 990 F.3d at 100 (citing *Castleman*, 572 U.S. at 171). Thus, when a defendant intentionally causes a suicide, he has used force to cause bodily injury, and the question whether the defendant personally applied the force, or intentionally caused the victim to apply the force through duress or deception, is irrelevant to the §4B1.2 (a) analysis.

### 3.  Guidelines Range

The Government agrees with the Probation Office's calculation that the Guidelines term of imprisonment is 30 to 37 months.  (PSR ¶ 78).

### 4.  Probation Recommendation

The Probation Department recommend the Guidelines sentence of 30 months' imprisonment, reasoning that:

> McKenzie has a criminal history that dates to at least 1996, and this is his sixth adult criminal conviction.  We think it is important to remark that McKenzie's most serious conviction, criminal attempt to commit homicide and aggravated assault, involved the use of a firearm.  In that case, McKenzie shot the victim five times.

His continued criminal conduct gives cause for concern about his propensity for antisocial behavior.

(PSR at 18).

## D.  Defendant's Sentencing Letter

McKenzie requests a 27-month sentence (the low end of the Guidelines range if he were in criminal history category II), on the basis of his difficult childhood, which included growing up in public housing, never having met his father, his mother's relationship with a heroin addict who was in and out of jail, beginning when McKenzie was five or six years old, McKenzie's involvement with the juvenile justice system beginning when he was 13 years old,  and his mother's death while he was in juvenile detention.  (Def.'s Sent. Mem. at 3-4).

The Government agrees that the Court should take the extremely unfortunate circumstances of McKenzie's childhood into account in fashioning an appropriate sentence.  While recognizing these circumstances undoubtedly contributed to McKenzie's repeated involvement in criminal activity as a child, young adult – and when he committed the instant offense at age 42 – it must also be recognized, however, that they do not provide any reason to have confidence that he will begin living a law-abiding life upon release from imprisonment, or that he is no longer a danger to the public.

## E.  A Guidelines Sentence is Warranted

As the Court is well aware, the Sentencing Guidelines provide guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  District courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  As described *supra*, the Guidelines term of imprisonment is 30 to 37 months.  A sentence within that range would not be greater than necessary to accomplish the purposes laid out in 18 U.S.C. § 3553(a).

The requested sentence is necessary to reflect the seriousness of the offense.  The carrying of a loaded firearm on the street by a previously convicted felon – who previously shot another man five times no less – is inherently dangerous.  The requested sentence is necessary to afford adequate deterrence and protect the public.  In addition to the obvious need for general deterrence in order to protect the public, McKenzie's criminal history makes clear that a substantial sentence is also necessary for the purpose of specific deterrence, in that McKenzie has five prior adult convictions including an attempted robbery and a separate attempted criminal homicide involving a firearm.

Hon. Cathy Seibel                                                                                   Page 6
October 13, 2022

**F.  Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose the Guidelines sentence of 30 to 37 months' imprisonment.


Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney


by:  _/s/ Jeffrey C. Coffman_
Jeffrey C. Coffman
(914) 993-1940
assistant United States Attorney

cc:     Elizabeth Quinn, Esq.
        (via ECF)